IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LORRIE A. DAVIS-AUGUSTIN,
        Plaintiff,

vs.                                                    Case No.: 3:14cv113/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
        Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 9, 10).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Acting Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence and comport with proper legal principles.  Thus, the decision of the Commissioner is affirmed.

I.      PROCEDURAL HISTORY

On June 28, 2007, Plaintiff filed an application for DIB, and on June 29, 2007, she filed an application for SSI, alleging in each application that she became disabled beginning November 5, 2004 (tr. 111–14, 270–81).[1]  Following the issuance of a decision by an administrative law judge

_____

[1] All references to "tr." refer to the transcript of the SSA record filed on July 18, 2014 (doc. 13).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

("ALJ") who found Plaintiff "not disabled," the Appeals Council ("AC") granted Plaintiff's request for review and remanded her case to the ALJ for further proceedings (tr. 135–38).  Among other instructions, the AC directed the ALJ to associate the claims in Plaintiff's June 2007 DIB and SSI applications with like claims Plaintiff filed on June 2, 2010, in which she alleged disability beginning March 27, 2010 (the day after the issuance of the ALJ's decision denying benefits on her initial applications) (*see id.* and  tr. 21).  The ALJ conducted a hearing on Plaintiff's associated applications on March 5, 2012, at which Plaintiff—who was represented by counsel—and a vocational expert ("VE") testified (tr. 54–79).  On June 15, 2012, the ALJ issued a decision in which she again found Plaintiff "not disabled" (tr. 21–40).  The AC denied Plaintiff's request for review (tr. 1–6).  Accordingly, the ALJ's June 15, 2012, decision stands as the final decision of the Commissioner, subject to review in this court.  <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.     FINDINGS OF THE ALJ

The ALJ made the following findings in her June 15, 2012, decision denying Plaintiff's claims (*see* tr. 21–40):

(a)     Plaintiff meets the insured status requirements of the Act through June 30, 2011[2];

(b)     Plaintiff has not engaged in substantial gainful activity since November 5, 2004, her alleged onset date;

(c)     Plaintiff has the following severe impairments:  multilevel degenerative disc disease, obesity, hypertension, hyperglycemia, prior history of head injury, headaches, possible degenerative joint disease in the knees, depression, anxiety, generalized pain disorder, cognitive disorder, personality disorder, and borderline intellectual functioning.  She also has the non-severe impairments of subluxation of the right thumb and status post removal of a foreign body from the right foot;

(d)     Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

---

[2] Thus, the time frame relevant to Plaintiff's claims for DIB is November 5, 2004 (date of alleged onset), through June 20, 2011 (date last insured).  The time frame relevant to her claim for SSI is June 29, 2007 (the date she initially applied for SSI) through June 15, 2012 (the date the ALJ issued her decision).  *See* <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

(e)     Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of medium work, as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c).  Plaintiff can lift and carry up to twenty pounds continuously, and she can frequently lift and carry between fifty-one and one hundred pounds.  She can sit for eight hours and stand/walk in combination for up to eight hours during an eight-hour workday.  She is limited to performing simple tasks and to tasks having no more than one-to-two step instructions;

(f)     Plaintiff is able to perform her past work as a warehouse worker, which is classified as medium, unskilled work;

(g)     Plaintiff was born on November 25, 1960, and on her alleged disability date was forty-three years old, which is defined as a "younger" individual aged 18–49.  During the pendency of her applications, Plaintiff subsequently changed age category to "closely approaching advanced age";

(h)     Plaintiff has at least a high school education and is able to communicate in English.

(i)     Transferability of job skills is not material to the determination of disability because, if the Medical-Vocational Rules are used as a framework for decisionmaking, a finding that Plaintiff is "not disabled" is supported, whether or not Plaintiff has transferable job skills;

(j)     In light of Plaintiff's age, education, work experience, and RFC, other jobs also exist in significant numbers in the national economy that Plaintiff can perform.  Representative occupations identified by the VE include laundry worker, kitchen helper, and industrial cleaner, all of which are medium, unskilled positions;

(k)     Plaintiff has not been under a disability, as defined in the Act, from November 5, 2004, through June 15, 2012, the date of the ALJ's decision.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983),

*superseded by statute on other grounds as stated in* <u>Elam v. R.R. Ret. Bd.</u>, 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998); <u>Lewis</u>, 125 F.3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve

---

[3]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     DISCUSSION

Plaintiff asserts two grounds for reversal with an award of benefits or remand for further proceedings: (1) the ALJ improperly refused to give great weight to the opinions of her treating physicians Felicia Canada, M.D., and George Smith, M.D.; and (2) the ALJ improperly discounted Plaintiff's subjective pain testimony.  The Commissioner responds that the ALJ's decision should be affirmed because Plaintiff has failed to demonstrate error in the ALJ's consideration of the opinions of Dr. Canada and Dr. Smith, and substantial evidence supports the ALJ's finding that Plaintiff's pain testimony is not fully credible.[4]

---

[4]  In addressing Plaintiff's arguments for reversal, the court largely relies on the parties' memoranda for the references to the 986-page administrative record (see docs. 15, 16).  In particular, the court relies on Plaintiff's memorandum because she bears the burden of demonstrating the Commissioner's decision to deny benefits was incorrect.  In addition, the court's July 21, 2014, Scheduling Order in part requires the parties to file memoranda in support of their respective positions which specifically cite the record by page number for all factual contentions (doc. 14).  The Scheduling Order cautions that the failure to do so "will result in the contention(s) being disregarded for lack of proper development" (id. at 2).  Accordingly, a party's memorandum must specifically and accurately cite the record in support of a properly developed factual contention or the court will disregard the contention.  Moreover, the court will not pore through the record to find evidence to support a party's argument that the party did not identify.  Nevertheless, the court may augment references to the record and factual information, where deemed appropriate, for clarity and completeness, as it has done here.  Also in this case, the court has not outlined the entire record, including Plaintiff's

A.        Treating Physicians' Opinions

Under what is known as the "treating physician's rule," substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);  Sabo v. Chater,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, however, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2).  The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), and must "state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990).

In this case, Plaintiff points to Dr. Canada's July 2, 2007, letter in which she states that Plaintiff "sustained an injury while driving a truck at work in 2004[5] and has not been able to work since that time" (tr. 551).  Dr. Canada further states that Plaintiff "complains of continued back pain and spasms that prevent her from doing the work she once enjoyed" and notes physical findings that

---

mental health records.  A discussion of these records is not needed here because, as the Commissioner notes, Plaintiff does not directly challenge any findings pertaining to her alleged mental limitations (although she cites the record in passing with respect to some of them).  Accordingly, in this Order the court only discusses in detail the medical evidence pertaining to Plaintiff's alleged physical limitations.

[5]  The record reflects  that Plaintiff was involved in a motor vehicle accident on October 17, 2004 (*see* tr. 448).

Plaintiff exhibited, including "moderate muscle spasms of the trapezius muscle [which extends over the back of the neck and shoulders] and pain with extension of her right leg [that was] consistent with sciatica" (*id.*).  Dr. Canada opines that "[b]ecause of these continued problems, it is unlikely that [Plaintiff] will be able to resume the work she once enjoyed" (*id.*).  Plaintiff also relies on a Physical Capacities Evaluation ("PCE") form and Clinical Assessment of Pain ("CAP") form prepared by Dr. Smith, a physician with Escambia Community Clinics ("ECC"), dated February 28, 2011 (tr. 789, 790).  In the PCE, Dr. Smith opines that Plaintiff could lift and/or carry ten pounds occasionally and five pounds frequently, sit for two hours during an eight-hour workday, and stand or walk for two hours during an eight-hour workday (tr. 789).  She could never operate a motor vehicle or work around hazardous machinery, and she could rarely climb, balance, bend, stoop, reach, or work around environmental hazards (*id.*).  According to Dr. Smith, Plaintiff could occasionally push or pull and frequently perform fine or gross manipulation (*id.*).  Dr. Smith opined that Plaintiff would likely be absent from work more than four days per month (*id.*).  In essence, Dr. Smith found that Plaintiff was able to perform less than the full range of sedentary work (*see* tr. 32). In the CAP, Dr. Smith notes that Plaintiff experiences pain "to such an extent as to be distracting to adequate performance of daily activities or work," that physical activity "[g]reatly increase[s her] pain to such a degree as to cause distraction from tasks or total abandonment of task," and that her medications' side effects "can be expected  to  be severe and to  limit  effectiveness  due to distraction, inattention, drowsiness, etc." (tr. 790).

The ALJ gave "little weight" to the opinions of Dr. Canada and Dr. Smith, stating the opinions were "inconsistent with the objective findings and treatment notes of record" (tr. 33). Plaintiff argues that the ALJ's rationale is inadequate.  Plaintiff apparently contends that Dr. Canada's and Dr. Smith's own records support their respective opinions and, moreover, that the medical record "as a whole" is consistent with them.  She further argues that the ALJ improperly gave greater weight to the opinion of an examining physician, Michael Kasabian, D.O., than she did to the opinions of Dr. Canada and Dr. Smith; failed to address the length, frequency, extent, and nature of Dr. Canada's and Dr. Smith's treatment relationships with Plaintiff; and failed to recontact Dr. Canada and Dr. Smith for clarification if she "misunderstood" their opinions.

As an initial matter, Dr. Canada's July 2, 2007, letter (tr. 551), does not actually express an opinion of disability. Rather, Dr. Canada merely states that it is "unlikely" that Plaintiff could return to her past work—presumably her job as a truck driver—and she offers no opinion whatsoever regarding Plaintiff's ability to perform any other work. Dr. Smith likewise offers no explicit disability opinion but rather just an assessment of Plaintiff's limitations and abilities—by checking or circling options on pre-printed forms. In any event, insofar as Dr. Canada's letter and Dr. Smith's PCE/CAP are read to offer opinions of disability, the court notes that the determination of disability is an issue that is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). As such, neither Dr. Canada's letter nor Dr. Smith's PCE/CAP is entitled to controlling weight. *Id. See also* Caulder v. Bowen, 791 F.2d 872, 878 (11th Cir. 1986). Nevertheless, the ALJ was required to consider and state the weight accorded to the evidence before her, along with any reasons for discounting the evidence. Lucas, 918 F.2d at 1574. In addressing the opinions of Dr. Canada and Dr. Smith, the court concludes the ALJ satisfactorily did so here.

The records from Dr. Canada that Plaintiff cites—which in part are handwritten and difficult to decipher—reflect that Dr. Canada treated Plaintiff on eight occasions between February 2006 and June 2007 (tr. 534–41). Dr. Canada saw Plaintiff for sinusitis, an upper respiratory infection, and hypertension in February 2006 (tr. 541). In July 2006 Dr. Canada treated Plaintiff for her complaint of severe abdominal pain (tr. 540), and in September 2006 she saw Plaintiff for hypertension, hyperlipidemia, gastroesophageal reflux disease ("GERD"), and a ganglion cyst on the left wrist (tr. 539). At Plaintiff's next visit, in March 2007, Dr. Canada noted Plaintiff's hypertension, hyperlipidemia, gastric problems, and obesity (tr. 538).

On April 17, 2007, Dr. Canada reported that Plaintiff was experiencing "muscle cramps," evidently in the legs and hands (tr. 537). Dr. Canada also diagnosed and prescribed medication for depression and noted Plaintiff's hypertension, hyperlipidemia, GERD, and a menopause condition (*id.*). The following month, on May 17, 2007, Dr. Canada reported that Plaintiff was experiencing lumbar paresthesias and muscle spasms, and she noted Plaintiff's obesity, depression, pruritus, and edema (tr. 536). At her June 12, 2007, visit Plaintiff reported experiencing severe pain from her head, down her neck and lower back, and to her legs, which she described as "achy," "sharp," and "crampy" (tr. 535). On a scale of 1 to 10, with "10" being the most severe pain, Plaintiff stated that her pain was a "10" and that she had experienced such pain for three years (*id.*). At that visit,

Plaintiff also apparently requested a disability letter for her attorney, and she left the examining room angry and tearful when discussing the matter with Dr. Canada, who noted she was trying to understand Plaintiff's situation because she had not been Plaintiff's physician at the time of her 2004 motor vehicle accident (*id.*).  Plaintiff returned to see Dr. Canada on June 28, 2007 (tr. 534).  The report of this visit mentions Dr. Canada's findings of a positive straight leg raising test, muscle spasms, back tenderness, and left leg pain (*id.*).  Plaintiff stated that she was experiencing pain in the head, neck, legs, and back that was a "10" and that she had experienced such pain for "a long time" (*id.*).  At this visit, Dr. Canada again noted Plaintiff's request for a letter to her attorney, along with the comment that Plaintiff "states she cannot work due to injuries suffered" in an earlier  motor vehicle accident (tr. 534).  On July 2, 2007, Dr. Canada provided the letter requested by Plaintiff for her attorney (tr. 551).

The references in Dr. Canada's office records to the upper and lower back/leg problems that provide the basis for her July 2007 disability letter—in which she opines that it is "unlikely" Plaintiff could return to her prior work in light of her back pain, spasms of the trapezius muscle, and sciatica symptoms—are extremely limited.  Plaintiff has cited no records from Dr. Canada prior to April 2007 that mention any signs or symptoms that might be associated with back problems, including sciatica.  Furthermore, up until that time Plaintiff had not reported to Dr. Canada that she was experiencing any significant degree of pain, other than with respect to her abdomen on one occasion.  Also, although in April 2007–June 2007 Dr. Canada made some physical findings potentially or specifically related to a back condition—such as cramps or muscle spasms, paresthesias, a single positive straight leg raising test, back tenderness, and pain along the back and in the left leg—these records offer virtually no specifics with regard to the severity or duration of these signs and symptoms.[6]  Moreover, Dr. Canada's records lack any references to or apparent reliance on objective diagnostic tests such as X-rays or magnetic resonance imaging ("MRI").  For all of these reasons, the court concludes that, to the extent Dr. Canada expresses a disability opinion in her July 2, 2007, the opinion is not supported by her own records.

With respect to the records of Dr. Smith, Plaintiff points to reports of office visits on November 16, 2004, and a follow-up visit on January 26, 2005 (tr. 457–60).  The earlier report notes

---

[6]  Also, the court did not locate a reference to spasm of the trapezius muscle in Dr. Canada's treatment notes; rather, it appears the first mention of this finding in her July 2007 letter.

Plaintiff's complaints of joint pain and myalgia, as well as headaches (tr. 459).  On physical examination Dr. Smith noted tenderness over the lumbar vertebra, and he diagnosed backache, unspecified (tr. 460), for which he prescribed several medications, gave Plaintiff a referral to pain management, and advised her to return in three months (*id.*).  At the follow-up visit in January 2005, Dr. Smith noted Plaintiff's complaints of pain "all over body" and her report of an emergency room visit for X-rays due to severe pain (tr. 458).  Physical examination revealed tenderness over the lumbar vertebrae (*id.*).  Dr. Smith's diagnosis again was backache, unspecified (*id.*).

In May 2009, an ECC physician's assistant noted that Plaintiff had presented demanding pain medication; Plaintiff was described as being very "argumentative" and "abusive" when the physician's assistant refused to authorize the medication and required Plaintiff to consult with Dr. Smith first.  At Plaintiff's appointment with Dr. Smith the following month, on June 25, 2009, he reported that Plaintiff had no pain on movement and exhibited full range of motion (tr. 751).  In addition, there was no paraspinous muscle spasm or tenderness over the thoracic or lumbar vertebrae (*id.*).  Dr. Smith's diagnoses included hypertension, hypercholesterolemia, depression, and dermatitis (*id.*).  Plaintiff was seen at the ECC twice in September 2009.  At the first visit, on September 4, 2009, Plaintiff complained of pain and swelling of the right hand (tr. 760).  Physical examination, including of the right hand, was unremarkable (tr. 761).  Plaintiff was advised to use an athletic bandage on her hand, and she was prescribed Anaprox (*id.*).  At her second visit, on September 23rd, Plaintiff again complained of right hand pain (tr. 757); Plaintiff reported that she had been seen by an orthopedist who told her she had a chronic subluxation of the right thumb that might require surgery (*id.*).  There was restricted flexion and tenderness of the right hand (tr. 758).  Examination of the musculoskeletal system revealed joint pain and joint stiffness, but backache and muscle pain were not present (tr. 757).  Plaintiff's diagnoses included hypertension; subluxation of the right thumb for which Darvocet was prescribed; depression; hypercholesterolemia; backache, unspecified; anxiety; and obesity (*id.*).  At a December 2009 visit Plaintiff presented for a follow-up on her hypertension condition (tr. 755).  Plaintiff stated that she felt "well with minor complaints" (*id.*).  On physical examination, neck pain, back pain, and muscle cramps were noted (*id.*); in addition, flexion in the right hand was restricted and the hand was tender (tr. 756).  Plaintiff's diagnoses were hypertension; anxiety; hypercholesterolemia; depression; and backache, unspecified (*id.*).

Plaintiff also points to a November 2010 record from Dr. Smith (tr. 802–03), which reflects diagnoses of hypertension and obesity (tr. 803), and a notation that myalgia was present (tr. 802). On February 23, 2011, Plaintiff presented to the ECC on follow-up for an upper respiratory infection and prescription refills (tr. 799). In general, she reported feeling well and her physical examination was largely unremarkable, other than the presence of some slight respiratory symptoms (*id.*). Plaintiff returned to the ECC on February 28, 2011, for a follow-up visit with Dr. Smith (tr. 795), the date he also completed his PCE and CAP. Plaintiff's complaints included obesity, anxiety, hypertension, and depression. Other than a finding of trace edema of the lower extremities, Dr. Smith's physical examination appears to have been unremarkable (tr. 796). Plaintiff was seen again at ECC on April 27, 2011, for a "scratchy voice" (tr. 793).

Initially, the court notes that preprinted forms, such as those completed by Dr. Smith, do not constitute persuasive evidence of the validity of the opinions expressed therein. *See, e.g.*, Hammersley v. Astrue, No. 5:08cv245–Oc–10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept.18, 2009) ("check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.") (citing Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting opinion from a non-examining physician who merely checked boxes on a form without providing any explanation for his conclusions); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")). Stated another way, opinions on such forms are merely conclusory, and it is entirely proper for an ALJ to reject a treating physician's opinion on such a basis. Moreover, in completing the PCE, Dr. Smith failed to respond to the question, "Please explain and briefly describe the degree and basis for any restriction checked above [ ]" (tr. 789). Thus Dr. Smith did not identify the conditions—much less explain their severity or effects—that necessitated the restrictions he recommended. This omission further supports a finding that Dr. Smith's PCE is unacceptably conclusory. Additionally, some of the records from Dr. Smith that Plaintiff cites are dated between April 2000 and April 2004, or prior to Plaintiff's alleged disability date, and have little or no apparent or stated connection to her current allegations of disability following a motor vehicle accident in October 2004 (*see* tr. 461–70, 472–78).

With respect to the records from November 2004 and January 2005 on which Plaintiff relies, the court notes that Dr. Smith's reports provide no detail regarding any objective range of motion or similar assessments or radiologic test results that might explain his two diagnoses of unspecified backache, and there is no mention of any other condition that might support his PCE and CAP recommendations.  Also, although Dr. Smith's 2004/2005 reports describing his physical findings and diagnoses were prepared fairly contemporaneously with the time of Plaintiff's October 2004 accident and the alleged onset of disabling symptoms in November 2004, they lack adequate specifics regarding the nature and extent of Plaintiff's injuries, her diagnosis, or her treatment.

The next records from Dr. Smith which Plaintiff cites are from May 2009—a gap of over four years from the January 2005 records—when Plaintiff presented to the ECC demanding pain medication, and June 2009, when Dr. Smith examined her and found no pain on movement, full range of motion, and no paraspinous muscle spasm or tenderness over the thoracic or lumbar vertebrae  (tr. 751).  These records obviously do not support Dr. Smith's findings in his PCE/CAP but rather contradict them.  Also, Plaintiff's visits in September 2009 were primarily in connection with her complaints of hand pain, not back problems (tr. 760, 757).  Although at the second visit that month and in December 2009 Dr. Smith again diagnosed backache, unspecified (tr. 756, 757), the court again notes there is no mention of any objective range of motion or similar tests or radiologic assessments that might shed light on a bare, vague diagnosis of "backache, unspecified."[7] Additionally, at her December 2009 visit Plaintiff indicated that she felt well, with only minor complaints (tr. 755).  In short, the court concludes that the records Plaintiff cites from Dr. Smith from May 2009 to December 2009 do not support the findings in his February 2011 PCE/CAP but rather are conclusory and inconsistent with those opinions.

The same is true with respect to the remainder of the records from Dr. Smith on which Plaintiff relies.  Dr. Smith's report from November 2010 mentions myalgia, but there is no diagnosis or assessment of a back problem (tr. 802–03).  On February 23, 2011, Plaintiff reported feeling well and a physical examination was essentially normal, with the exception of some slight respiratory

---

[7] As to Plaintiff's complaints of hand pain, as previously noted, Dr. Smith failed to identify the conditions that required the severe restrictions he recommended in his PCE.  Dr. Smith's PCE finding that Plaintiff could occasionally push or pull and frequently perform fine or gross manipulation (tr. 789), however, does not seem to implicate significant limitations on the use of her hands.  This conclusion is also consistent with the ALJ's finding at step two that Plaintiff's hand condition is not a severe impairment, which step-two finding Plaintiff does not challenge or otherwise contest.

symptoms (tr. 799).  Significantly, on February 28, 2011—the date Dr. Smith prepared his PCE and CAP—Plaintiff's physical examination was largely unremarkable, other than a finding of trace edema of the lower extremities (tr. 796).  The last visit cited by Plaintiff, in April 2011, was simply for medication refills and a "scratchy voice" (tr. 793–94).

As outlined above, based on its review of the medical records cited by Plaintiff, the court concludes that the opinions Dr. Smith expressed in his February 28, 2011, PCE/CAP are conclusory, not supported by his own records, and/or are inconsistent with his own records.

Plaintiff also argues that the medical record, taken as a whole, supports the opinions of Dr. Canada and Dr. Smith (doc. 15 at 11).[8]  For the reasons stated above, in both instances the underlying opinions on which Plaintiff relies are of little value, which renders Plaintiff's argument without force.  Additionally, Plaintiff has failed to develop this argument adequately.  In the space of a single paragraph, Plaintiff cites twelve conditions (*see* doc. 15 at 11–12, referring to records concerning the cervical spine, the lumbar spine, obesity, hypertension, headaches, depression, anxiety, generalized pain disorder, cognitive disorder, personality disorder, possible degenerative joint disease in the knees, and borderline intellectual functioning) and various prescribed medications (*id.* at 12).  But Plaintiff provides no accompanying substantive discussion of their impact, in other words, no correlating explanation of how these conditions and medications affect her daily activities or her ability to work.  Merely recounting conditions that Plaintiff was "diagnosed with[ ] and treated for" (*id.* at 11) and referencing page numbers in the record that mention the conditions or treatment is insufficient.  Plaintiff must demonstrate how the conditions and record citations support the argument that "the medical record as a whole supports the opinions of Dr. Canada and Dr. Smith" (doc. 15 at 2).  *See* Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (indicating that "the mere existence of [ ] impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard." (citation omitted).  Because Plaintiff has not explained how the records she cites concerning her obesity, hypertension, headaches, depression, anxiety, generalized pain disorder, cognitive disorder,

---

[8] *See* doc. 15 at 11–12, citing records from Shands Medical Group (tr. 448, 449), Sacred Heart Hospital (tr. 891), and Jackson North Medical Center (tr. 872) emergency rooms; Baptist Hospital (tr. 484, 489, 493, 495, 554); Escambia Community Clinics (tr. 456, 457, 460, 464, 591, 700, 756, 758, 797); physicians William M. Jones (tr. 642), Michael Kasabian (tr. 734), and Douglas H. Fraser (tr. 769); psychologists Shannon-Wright Johnson (tr. 779, 786), Mark Moreland (tr. 597), and J. Warren Toms (tr. 723); and Gulf Coast Orthopedic Specialists (tr. 554).

personality disorder, possible degenerative joint disease in the knees, and borderline intellectual functioning support the opinions of Dr. Canada and Dr. Smith (whose disability opinions do not even reference the just-listed impairments), the court will not address those impairments or the records pertaining to them.  Rather, the court limits its review, below, to the medical records from other sources cited by Plaintiff that are related to her upper and lower back conditions, as mentioned by Dr. Canada in her July 2007 letter.  To the extent Dr. Smith based his recommended limitations on Plaintiff's back problems, the court's discussion of the records pertaining to Dr. Canada's opinion also applies to Dr. Smith's PCE/CAP.[9]

One of references cited by Plaintiff that pertains to her back condition (*see* doc. 15 at 11–12), is the report of radiographs of the cervical spine obtained in October 2004 (tr. 449).  The evaluator's impression is "1.  Mild reversal of cervical lordosis.  Correlate clinically.  2. Mild degenerative changes at C5–C6 as described." (*id.*).  The mild degenerative changes at C5–C6 involve "mild loss of disk height and a small anterior osteophyte." (*id.*).  Plaintiff also points to X-rays taken in January 2005 of her cervical spine, the report of which states "No acute process identified.  Degenerative changes are noted, greatest at C5–6" (tr. 495).  With respect to those degenerative changes, the report describes a "large chronic spur of the anterior aspect of C5" and "asymmetric, moderate degenerative disc disease at C5–6," with slight reversal of the expected lordosis at that level (*id.*).

Plaintiff additionally relies on the report of February 2005 MRIs of the cervical and lumbar spine (tr. 484–85).  The "Impressions" sections of this report, in part, state:

---

[9]  As noted, in addition to listing her various impairments without discussing how they affect her ability to perform daily activities or to work, Plaintiff also lists the numerous muscle relaxant, anti-inflammatory, and pain medications she has been prescribed since 2004 (doc. 15 at 12).  These include Soma in October 2004 (tr. 448); Flexeril in January 2005, February 2005, October 2007, December 2009, and March 2011 (tr. 457, 489, 591, 756, 797); Darvocet in February 2005, October 2007, and December 2009 (tr. 457, 591, 756); Skelaxin in November 2004, January 2005, February 2005, and August 2007 (tr. 457, 460, 493, 554); Naproxen in January 2005 (tr. 489); Lortab in January 2005, August 2007, and March 2010 (tr. 493, 554, 891); and Motrin in February 2009 and December 2011 (tr. 700, 872).

Although it appears that Plaintiff contends otherwise, the mere fact that she has been prescribed medications for various conditions for many years does not establish her disability.  Rather, through credible evidence Plaintiff must demonstrate how her medications are ineffective in relieving disabling symptoms or how they adversely impact her ability to work, for example due to side effects.  *See, e.g.*, Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981) (acknowledging the potential for medication to render claimant disabled where various medications were prescribed that allegedly caused serious side effects).  Here, Plaintiff has failed to do so.

Prominent posterior disc spur complex in the midline at C5–6 extending posteriorly
to abut the anterior margin of the cervical cord.  No foraminal stenosis is seen within
the cervical spine.

\* \* \*

Significant degenerative changes at the L3–4 and L4–5 levels.  There is some
bilateral foraminal encroachment inferiorly at L3–4 secondary to disc bulge and facet
hypertrophy.  The facet joints at L3–4 do contain some fluid bilaterally.  Some
inferior neural foraminal encroachment bilaterally at L4–5, greater on the left than
on the right, is also present.  No localized disc extrusion is seen.

(*see id.*).

Plaintiff also cites a record from October 2007, which indicates she presented to the ECC
for several complaints, including lower back pain (tr. 591, 592).  Plaintiff reported that her pain level
was "10" (tr. 592), and that Darvocet previously had worked well for her (tr. 591).  Plaintiff's
diagnoses, apparently rendered by a physician's assistant, include unspecified backache, for which
she was advised she could take over-the-counter Tylenol or Motrin (tr. 593).  Plaintiff was further
advised that if she wanted to discuss taking Darvocet again she would need to schedule an
appointment with her primary care physician (*id.*).

In chronological terms, the next record that Plaintiff cites regarding her back problems is
from Dr. Jones, who examined Plaintiff in March 2008 (*see* tr. 641–45).  Dr. Jones noted that
Plaintiff's gait was normal and non-antalgic, and she did not use an ambulatory device (tr. 642).  She
was able to toe walk, heel walk, and "tandem gait" (*id.*).  There was diffuse muscle tenderness along
the cervical, thoracic, and lumbar spine, but no palpable trigger points (*id.*).  Forward flexion was
to 60 degrees, with extension to 35 degrees; both maneuvers caused pain (*id.*).  Adequate muscle
strength was noted (*id.*), sensation to light touch was intact, reflexes were normal, there was no
muscular atrophy of the lower extremities, clonus was negative, and the Babinski reflex was absent
(*id.*).  The straight leg raise on both sides "cause[d] diffuse leg pain in a nonspecific pattern" (*id.*).
Dr. Jones' impression was "[l]ow back pain with a strong myofascial component secondary to auto
accident" in October 2004 (*id.*).  Among other recommendations, Dr. Jones suggested obtaining an
updated MRI of the lumbar spine; using the muscle relaxants Zanaflex and Skelaxin and the anti-
inflammatory pain medication Naprosyn; and undergoing physical therapy (*id.*).  When Plaintiff
began physical therapy in April 2008 she reported a pain level of "10" (tr. 690).  By June 2008,

Plaintiff reported that her pain level was "1" and that her overall condition was "improving" or that she had no increase in symptoms (*see* tr. 648–54).

Another record cited by Plaintiff is the July 2009 treatment note from examiner Dr. Kasabian, in which he references Plaintiff's complaint of lower back pain and states that a February 2005 MRI of the lumbar spine revealed "some bilateral foraminal encroachment L3–4 area" (tr. 734).  Dr. Kasabian's objective physical findings include knee tenderness with crepitation on range of motion testing; positive supine-position straight leg raise on the left side; normal muscle strength in all four extremities; the ability to stand on heels and toes and ambulate without an assistive device with no limp; intact and equal peripheral pulses in all four extremities with no peripheral edema seen; grossly intact cranial nerves and cerebellum; normal fine grip dexterity; and the ability to hold fine objects without any difficulty (tr. 733).  Based on his examination, Dr. Kasabian prepared a detailed "Medical Source Statement" which, in essence, reflects his opinion that Plaintiff is capable of performing heavy work (tr. 737–43).

Contrary to Plaintiff's contention, the above-cited records on which she relies are not, as a whole, sufficient to support any opinion of disability expressed by Dr. Canada or Dr. Smith arising from her upper and lower back problems.  The October 2004 and January 2005 X-rays of the cervical spine show only "mild" or "moderate" changes (tr. 449, 495).  While the reports of the February 2005 MRIs of the lumbar and cervical spine reveal degenerative changes, they do not state that the changes were severe in degree or suggest they would result in severe pain and/or disability (*see* tr. 485).  Moreover, although in October 2007 Plaintiff reported a subjective pain level of "10" at an ECC visit, she received only conservative care (tr. 593).   No urgent treatment was recommended or administered; rather, Plaintiff was advised to request an appointment with her primary care physician if she wished to start taking Darvocet again and informed that meanwhile she could use an over-the-counter medication for pain (*id.*).

Additionally, although Dr. Jones' March 2008 findings of diffuse muscle tenderness along Plaintiff's spine, some pain with spinal flexion and extension, and pain bilaterally from straight leg raising (tr. 642), are not patently inconsistent with Dr. Canada's findings from May/June 2007 (tr. 534–36) or Dr. Smith's from November 2004, January 2005, and December 2009 (tr. 458, 460, 755), none of the findings—from any of these physicians—is of sufficient severity to support a finding of disability.  Furthermore, by June 2008, following the physical therapy advised by Dr. Jones,

Plaintiff reported a pain level of "1," with improved overall condition or no increase in symptoms (*see* tr. 648–54). Also, Dr. Kasabian merely noted in July 2009 that he had reviewed the February 2005 MRI report; he did not comment on the report or make any observations about deterioration or changes of any sort in Plaintiff's condition in the intervening four years. To the contrary, Dr. Kasabian reported largely unremarkable physical findings, and he prepared an RFC assessment in which he opined that Plaintiff was capable of performing heavy work. In any event, Dr. Kasabian's report—similar to the other references to the record regarding back pain cited by Plaintiff—does not reflect findings of sufficient severity to support any opinion of disability offered by Dr. Canada in her July 2007 letter or by Dr. Smith in his February 2011 PCE/CAP.

  For the above reasons, the court does not agree with Plaintiff's contention that, taken as a whole, the medical record supports any disability opinion from Dr. Canada or Dr. Smith. In sum, the court concludes that the ALJ stated good cause for refusing to give great weight to Dr. Canada's July 2007 letter and Dr. Smith's February 2011 PCE/CAP. As the ALJ's refusal to accord great weight to these opinions is supported by substantial evidence, her determination should not be disturbed.

  Plaintiff's additional arguments do not alter this conclusion. Plaintiff apparently contends that the ALJ improperly gave more weight to the opinion of examining physician Dr. Kasabian than she gave to the opinions of treating physicians Dr. Canada and Dr. Smith even though their opinions should be entitled to more weight than his (doc. 15 at 10–11). As discussed previously, the ALJ had good cause to reject the treating physicians' opinions. *See* Lewis, 125 F.3d at 1440–41 (indicating that the opinion of an examining physician may not be accepted over the contrary opinion of a treating physician without good cause). Moreover, Plaintiff acknowledges that the ALJ did not fully adopt Dr. Kasabian's opinion. Rather, the ALJ disagreed with Dr. Kasabian's conclusion that Plaintiff was able to perform heavy work, although she adopted Dr. Kasabian's objective physical findings. These findings constitute substantial evidence supporting the ALJ's RFC determination that Plaintiff could perform a reduced range of medium work. *See* Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (report of consultative examiner may constitute substantial evidence supportive of a finding adverse to a claimant).

  Citing 20 C.F.R. §§ 404.1527(d), 416.927(d), Plaintiff also complains that in rejecting the opinions of Dr. Canada and Dr. Smith the ALJ failed to address the length, frequency, nature, and

extent of their treatment relationships with her.  Plaintiff appears to refer to subsection (c)—rather than (d)—of 20 C.F.R. §§ 404.1527, 416.927.  These Regulations in part provide that when, as here, the ALJ concludes that a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).  The Regulations further provide that "[The Commissioner] will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

As discussed previously, the ALJ weighed the opinions of Dr. Canada and Dr. Smith based on the medical evidence supporting their opinions and the opinions' consistency with the record as a whole.  The ALJ then discounted the opinions, citing "good reasons."  Nothing in the Regulations or relevant case law requires her to do more.  The ALJ need not separately discuss every factor that she considers in according weight to the treating source's opinion, provided she "give[s] good reasons."  *See* Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) (explaining that the ALJ need not explicitly discuss every factor in 20 C.F.R. § 404.1527; rather, she need only "minimally articulate" her reasons for discrediting a treating physician); Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (indicating that although ALJs should consider all of the relevant § 404.1527 factors, it is not necessary that they explicitly discuss every one of them).  Accordingly, the ALJ did not err by failing to explicitly discuss every single one of the factors outlined in §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

Finally, Plaintiff contends that the ALJ was required to recontact Dr. Canada and Dr. Smith in the event she "misunderstood" their opinions (doc. 15 at 12).  In support of this contention, Plaintiff cites 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1), from which she quotes:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

(doc. 15 at 12).

At the time the ALJ issued her decision on June 15, 2012, however, the Regulations Plaintiff cites were no longer in effect.  Effective March 26, 2012, the Regulations containing the subsection on recontacting medical sources, 20 C.F.R. §§ 404.1512 and 416.912, were amended, with the current Regulations eliminating paragraph (e), "Recontacting medical sources."  Under the revised Regulations the ALJ "may" recontact the medical source if the ALJ has insufficient evidence to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1520b(c); 416.920b(c).

In a nineteen-page single spaced decision, the ALJ outlined in detail Plaintiff's extensive medical records, her hearing testimony, and the opinion evidence.  Under the current Regulation, or even under the prior version of the Regulation, the court concludes there was no need for the ALJ to recontact Dr. Canada or Dr. Smith.  The record before the ALJ was sufficiently developed for her to make a full and fair decision regarding Plaintiff's claims.  Not only is there no indication that the ALJ "misunderstood" the opinions of Dr. Canada and Dr. Smith, but also the record was more than sufficient for her to determine whether Plaintiff was disabled or not disabled.  Moreover, and dispositively, although required under Eleventh Circuit precedent, Plaintiff has not demonstrated any evidentiary gaps that resulted in unfairness or clear prejudice to her.  *See* Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (in determining whether remand is appropriate, courts should be guided "by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.").  Indeed, Plaintiff alleges no prejudice and has shown none.  There is no allegation or evidence whatsoever that the ALJ's decision would have changed in light of any additional information.  Consequently, the ALJ did not err by failing to recontact Dr. Canada or Dr. Smith.

B.      Credibility Determination

A claimant may establish that she has a disability through her own testimony regarding her pain or other subjective symptoms.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Id.*  "While both the Regulations and the Hand [v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986)] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires

objective proof of the pain itself." Elam, 921 F.2d at 1215.  "[P]ain alone can be disabling, even when its existence is unsupported by objective evidence." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted).  The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor to be considered.  Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  If the ALJ determines under the third prong of the standard that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain alleged, she must then evaluate the extent to which the intensity and persistence of the pain limits the claimant's ability to work.  20 C.F.R. § 404.1529(b).  The ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence relating to how the pain or symptoms affect the claimant's daily activities and ability to work. Id., § 404.1529(c). Although credibility determinations "are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam), if the ALJ discredits the claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).  The ALJ need not, however, specifically refer to every piece of evidence in articulating her reasons for discounting the claimant's subjective testimony, provided the decision "is not a broad rejection" which is not enough to enable the court to  conclude that the ALJ considered the medical condition as a whole.  Dyer, 395 F.3d at 1211.

Plaintiff testified at her March 5, 2012, administrative hearing that in the past she had worked as a care giver, van driver, truck driver, grocery warehouse worker, day care worker, waitress, security guard, and coat checker (tr. 59–62).  According to Plaintiff, she has problems concentrating, as well as neck, back, and leg problems (tr. 63).  Her back pain causes her to fall and experience difficulties sitting for prolonged periods (tr. 64).  To ambulate, she must use a walker that was prescribed for her (id.) and, before that, she used a cane (tr. 72). Plaintiff testified that she is able to walk for about twenty-five minutes with her walker (tr. 66–67), and that she falls because her back and legs give out (tr. 67).  She can stand eight to nine minutes with her walker and sit for ten minutes (id.).  She is limited to lifting about ten pounds, can go to the grocery store but needs assistance reaching for items, can drive short distances twice a week, and needs to hold onto a railing when climbing stairs (tr. 68).  She cannot bend or stoop (tr. 68–69) or grip a coffee cup, but she can pick

up an ink pen (tr. 69).  On a scale of 1 to 10, with "10" being the worst pain, Plaintiff estimated that her back pain was an "8" (tr. 71).  Plaintiff testified that she is able to cook, but she needs assistance with bathing, dressing, and combing her hair (*id.*).  When showering, she uses a chair because she cannot stand for prolonged periods (*id.*).  Plaintiff can wash dishes and clothes, but she cannot iron, sweep, mop, make her bed, clean the bathroom, take out the trash, or vacuum (tr. 69–70).  Plaintiff's cousin assists her with bathing, dressing, and doing housework (*id.*).  Plaintiff spends her days looking out the window and watching television; she also sleeps approximately four hours during the day (tr. 70).  Her medications make her sleepy (tr. 71).

The ALJ concluded that Plaintiff has medically determinable impairments that reasonably could be expected to cause some of her symptoms (tr. 38).  Then, as the pain standard requires, the ALJ proceeded to address the extent to which the intensity and persistence of Plaintiff's pain limits her ability to work, citing the record to support her conclusion that Plaintiff's statements are not credible to the extent they are inconsistent with the assessed RFC (*id.*).  Challenging the ALJ's finding, Plaintiff submits that she has underlying medical conditions and thus meets the first prong of the standard, and that her conditions could reasonably be expected to produce her pain, which meets the third prong  (doc. 15 at 14–16).  According to Plaintiff, she therefore "fulfills the pain standard, given there is evidence of an underlying medical condition, and that medical condition can reasonably be expected to give rise to the claimed pain" (*id.* at 17).

While Plaintiff recites the ALJ's finding that her "'statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with' the above RFC assessment" (doc. 15 at 16), Plaintiff does not address that finding or the ALJ's evaluation of the degree to which Plaintiff's symptoms or pain limit her ability to work.  To the extent Plaintiff has not waived the issue by failing to develop any argument with regard to it, the court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully credible.

The ALJ found that "the longitudinal medical evidence does not support the severity of physical impairments alleged or the presence of disabling impairments that would preclude" Plaintiff from performing all work (tr. 32).  Among other records, in support of this finding the ALJ discussed the report of Drs. Canada, Smith, and Kasabian.  As discussed previously, the records

cited by Plaintiff from Dr. Canada reveal few references to upper and lower back problems. Also, although Plaintiff reported in June 2007 that she was experiencing pain that was a "10" in severity due to her back problems, and had experienced such pain for three years, it appears that at none of her prior visits to Dr. Canada did Plaintiff even mention having back pain. Indeed, the majority of the reports of Plaintiff's examinations from both Dr. Canada and Dr. Smith document relatively few positive physical findings, much less severe physical findings, with respect to her back problems, and the medical treatment she received, which consisted of medication and physical therapy, was conservative in nature. As to Dr. Kasabian's opinion, the ALJ disagreed with his conclusion that Plaintiff could perform heavy work but nevertheless relied on his physical findings—as well the lack of findings in Dr. Canada's and Dr. Smith's reports—to conclude that Plaintiff was capable of performing less than the full range of medium work. In addition, even after her alleged disability onset, Plaintiff continued to work, at least intermittently, and she acknowledged that she is able to live alone and can cook, wash dishes, do laundry, and drive a car, although she testified that she is unable to do some kinds of housework, comb her hair, dress, or bathe without assistance. As the ALJ found, Plaintiff's continuing to work and retained abilities with respect to certain daily activities suggest she is more capable of physical activity than she contends and undermines her credibility. Similarly, objective testing—in the form of X-rays and MRIs from October 2004, January 2005, and February 2005—did not reveal severe findings that might support the completely disabling degree of pain Plaintiff alleges. Plaintiff also reported in June 2008 to a physical therapist that her pain was only a "1" and that her overall condition was improving. Again, as the ALJ noted, such information "contradicts [Plaintiff's] testimony that she constant endures pain at an 8 out of a 10 point scale, and undermines her credibility" (tr. 34).

In summary, the court is satisfied that substantial evidence supports the ALJ's conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully credible. As the ALJ articulated "explicit and adequate reasons" for discounting Plaintiff's subjective testimony, *see* Dyer, 395 F.3d at 1210, her credibility determination should stand.

V.    CONCLUSION

For the foregoing reasons, the ALJ's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560.

Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**, that this action is **DISMISSED,** and that the clerk is directed to close the file.

At Pensacola, Florida this 26th day of August 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**